# INSURANCE COMPANY *v.* NATIONAL BANK.

## (*Nashville.* January 14, 1890.)

1. FIRE INSURANCE. *Waiver of condition in policy. Building standing on leased ground.*

   Insurer waives the printed condition in a fire policy declaring that "if the building insured stands upon leased ground it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy will be void," where, with full knowledge, communicated by the assured, of the fact that the building stood on leased ground, he prepared, signed, and delivered the policy, omitting the required statement, and accepted the premium from the assured, who had no actual notice either of the condition or the omission until a loss had occurred.

   Cases cited and approved: Delahay *v.* Ins. Co., 8 Hum., 684; Ins. Co. *v.* Barker, 7 Heis., 504; Ins. Co. *v.* Sorrels, 1 Bax., 352; Ins. Co. *v.* Crockett, 7 Lea, 726.

2. SAME. *Insurer affected by his agent's knowledge.*

   Insurer is affected by notice of the fact that the building stood on leased premises, communicated to his local agent by the assured in making verbal application for the policy.

3. SAME. *Parol evidence admissible to show agent's knowledge.*

   And parol evidence is admissible to show that assured communicated to the agent the fact that the building stood on leased premises, notwithstanding the provision in the policy that "the use of general terms, or any thing less than a distinct, specific agreement, clearly expressed and indorsed on the policy, shall not be construed as a waiver of any printed or written restriction therein."

   Cases cited and approved: 28 Gratt., 389 (S. C., 26 Am. Rep., 364); 55 Miss., 479 (S. C., 30 Am. Rep., 521, 526).

4. SAME. *Proof of extent of loss. Valued policy.*

   Proof of cash value of building at time of its destruction is requisite in a suit, for its total loss, upon a fire policy wherein it was stipu-

24—4 P

Insurance Company *v.* National Bank.

lated that the insurer was " to make good all such immediate loss or damage, not exceeding in amount the sum specified, as shall happen by fire to the property specified,  ❊   ❊   ❊   the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss." This is not a " valued policy."

5. SAME.   *Same.   Preliminary proofs of loss not admissible.*

The fact or extent of the loss cannot be shown, on the trial of a suit upon a fire policy, by introduction of the preliminary proofs of loss furnished by the assured to the insurer under the stipulations of the policy.

Cases cited and approved: 46 Md., 302; 87 Mo., 62; 65 Wis., 585.

6. SAME.   *Same.   Sufficiency of proof.*

The fact that assured applied for $3,000 insurance on his building and was granted $2,000 is not sufficient, of itself, to prove that its cash value was $2,000 at a subsequent date, when it was totally destroyed by fire.

7. SUPREME COURT PRACTICE.   *Finding of trial Judge conclusive, when.*

Finding of trial Judge sitting without a jury, upon the facts of a case, is conclusive upon this Court, when supported by one positive witness and opposed by a single negative witness only.

8. SAME.   *When case will be remanded.*

Case will be remanded for another trial, where a judgment rendered in favor of the plaintiff, upon a trial before the Judge alone, is reversed for want of proof to support its *amount*, this Court being of opinion there is a good cause of action, and that the plaintiff below was misled without culpable negligence on his part.

---

FROM RUTHERFORD.

---

Appeal in error from Circuit Court of Rutherford County.   ROBT. CANTRELL, J.

J. C. Bradford for Insurance Company.

Palmer & Palmer for National Bank.

Folkes, J.    This was an action at law to re-
cover the amount of a policy of insurance for the
sum of two thousand dollars, issued by the plaint-
iff in error upon a "one-story brick, metal roof
building, situated in the town of Murfreesboro,
Tenn.," the property of defendant in error. To
the declaration the defendant below pleaded *nil
debit* and *non assumpsit.*

The case was tried by the Circuit Judge, with-
out the intervention of a jury, resulting in a judg-
ment for the full amount of the policy, with interest.

Motion for a new trial having been overruled,
the defendant has appealed in error.

The policy contained among its printed pro-
visions the stipulation that "if the interest of the
assured in the property be any other than the
entire, unconditional, and sole ownership of the
property for the use and benefit of the assured,
or if the building insured stands upon leased
grounds, it must be so represented to the com-
pany, and so expressed in the written part of the
policy, otherwise the policy shall be void."

It was agreed at the trial below that the house
insured stood on leased ground; that the building
belonged to the bank and the ground to the
Nashville, Chattanooga and St. Louis Railway
Company; that the lease was made in March,

1868, to run for twenty years; that the bank had made out and furnished to the insurance company the preliminary proofs of loss, as required by the policy, and proof of the fact that such preliminary proofs of loss had been so furnished was waived. It was not stated in the written portion of the policy that the house insured stood upon leased ground. Proof was admitted, over the objection of counsel for the company, that the cashier of the bank, at the time the insurance was applied for, informed the local agent of the company, who countersigned and issued the policy, that the house sought to be insured stood upon leased ground. The agent, in his testimony, says if such information was given he did not hear it; but further on in his proof the agent says that he "had an idea that the house stood upon leased ground."

Both the agent and the cashier were residents of the town of Murfreesboro, and the locality of the building near the depot was well known.

Without imputing the slightest dishonesty to the agent, the Circuit Judge has found, as a fact, from the proof, that such information was given at the time of the application, and that the agent, in a few days thereafter—perhaps the next day—delivered the policy, folded, to the cashier of the bank, who paid the premium to the agent, and, without reading, put the policy among the valuable papers of the bank, and did not know, until after the fire, its contents.

There was no written application.

The trial Judge held that the issuing and delivery of the policy with the knowledge of agent concerning the fact that the house stood on leased ground, without calling the attention of the assured to the clause in question, amounted to a waiver of · the condition, leaving the company liable as though no such condition had been contained in the policy. This is assigned .as error.

For the plaintiff in error it is insisted that parol evidence of a notice to the agent is inadmissible, as tending to vary the terms of the written contract; that mere knowledge on the part of the agent is of no avail to the assured if not indorsed or written in the policy where the instrument itself requires such writing; and that such is certainly the rule at law, whatever may be the relief obtainable in equity.

It is not to be denied that each of the above contentions is sustained by the authority of adjudged cases; but it is equally true that the converse of each proposition is amply fortified by numerous adjudications of the highest authority. The question has been so much discussed, and the grounds upon which the antagonistic conclusions rest are so familiar, that it would be uninstructive at this late day, and certainly unprofitable, to attempt a review of the cases or a criticism thereof. We content ourselves, therefore, with a statement of our holding.

The knowledge of the agent that the building sought to be insured stood upon leased ·ground,

obtained by the direct information furnished by
the assured, amounts to a waiver of the printed
condition requiring the fact to be written in or
upon the policy, and, in the absence of a collusion
between the assured and the agent to mislead the
company, is binding upon the latter.   To so hold
is not to encroach upon the general rule concern-
ing the inadmissibility of parol proof to alter or
vary the terms of the written contract.

The ground of the company's liability in such
cases is that the knowledge of the agent is in
law the knowledge of the principal; and to permit
the insurance company, possessed of such knowl-
edge, and itself required to do the writing upon
the policy, to accept the premium and deliver the
policy containing such condition without writing
the fact thereon, would be to allow the company
to perpetrate a fraud upon the assured.   It would
virtually be allowing the company to accept the
money of the assured in payment for a policy
known to the company to be void and inoperative
at the moment of its issuance, and with this
knowledge permit it to retain the money, leaving
the assured under the false impression that he
has a valid insurance upon and protection to his
property, and to remain under such impression
until his property is destroyed.   He is then to be
told by the company that "You have no insur-
ance, and you have never had any under the
policy, as was known to us at the time of its
delivery, and has been so known to us ever since."

When the insurer undertakes the preparation of the contract, he will be estopped to take advantage of the failure of the instrument, signed alone, as it is, by himself, to express any fact that has been duly communicated by the assured, and omitted by the negligence, mistake, or design of the insurer, its officers or agents.

This result is not changed nor affected by the other clause, which reads that "the use of general terms, or any thing less than a distinct, specific agreement, clearly expressed and indorsed on the policy, shall not be construed as a waiver of any printed or written restriction therein." This clause may be operative to restrict or confine the meaning of a written waiver, but, so far as it is relied on to defeat the waiver which the law raises and makes under the facts of this case, it is met and answered by the principle which disposes of the clause as to leased grounds. In other words, it can add nothing to the support of the position contended for by counsel of the insurance company. If he cannot stand on the clause first quoted, he can find no refuge in the one last mentioned. See May on Insurance, Secs. 131, 132, and cases cited in notes; 1 Wood on Insurance, Secs. 88–90, and cases cited in notes; *Manhattan Fire Insurance Company* v. *Weill*, 28 Gratt., 389 (S. C., 26 Am. Rep., 364); *Planters' Bank Insurance Company* v. *Myers*, 55 Miss., 479; 30 Am. Rep., 521, 526.

But, without multiplying citations from other

States, we have only to turn to our own reports to see the tendency and scope of the decisions in this State leading inexorably to the conclusion we have announced. *Delahay.* v. *Memphis Insurance Company*, 8 Hum., 684; *Manhattan Insurance Company* v. *Barker*, 7 Heis., 504; *Planters' Insurance Company* v. *Sorrels*, 1 Bax., 352; *Insurance Company* v. *Crockett*, 7 Lea, 726.

It was held in *Equitable Insurance Company* v. *McCrea, Maury & Co.*, 8 Lea, 541, that the delivery of a policy without demanding payment is a waiver of the clause that the policy shall not be considered as binding until the actual payment of premium. And in *American Central Insurance Company* v. *McCrea, Maury & Co.*, 8 Lea, 513, it was held that a condition against running at night is waived by the delivery of the policy, with a full knowledge on the part of the agent who had countersigned and delivered the policy that the manufactory was then, and had constantly been, operated at night; and that a general provision of a policy allowing additional insurance to a specified amount waives to that extent a condition requiring notice and indorsement of existing or subsequent insurance, and this, too, in a policy containing the clause limiting the use of general terms similar to the one in the case at bar.

It is, however, urged by counsel that if we should hold that knowledge of the agent can operate as a waiver of such a stipulation as we have here, the rule ought not to be applied to

this case, because the proof fails to show that the agent heard and understood the statement by the cashier of the bank that the property stood on leased ground, and that the waiver must be made *intentionally* and with *full knowledge.* It is sufficient to say that we have the positive testimony of the assured against the negative evidence of the agent, and that the finding of the Circuit Court upon such a state of the record is, under the rule in this Court, conclusive of the fact of full knowledge. With the knowledge conclusively established, and the conduct of the agent shown in writing and delivering the policy and receiving premium therefor, the law presumes the *intentional* waiver, upon the principles already stated.

It is next assigned as error that the plaintiff below "failed to introduce at the trial any proof of the value of the property destroyed, or of the amount or extent of the loss."

The undertaking of the company, as expressed in the policy, was "to make good * * * all such immediate loss or damage, not exceeding in amount the sum specified ($2,000), as shall happen by fire to the property specified, * * * the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same shall have been made by the assured and received at the office of the company in New York," etc.

This assignment must be sustained.

The record does fail to show any effort to prove the actual cash value of the property at the time of the loss. It is proven that the property was totally destroyed, and that preliminary proofs of loss had been made and forwarded as required by the terms of the policy. Now, however sufficient this proof might be in a suit on what is known as a "valued policy," it is manifest that such proof will not authorize a judgment against the company for the full amount of the policy, where, by the terms of the contract the company is to pay only the cash value of the property at the time of the loss, "not exceeding the amount named in the policy."

The fact that it was agreed that the preliminary proofs of loss had been duly furnished, and the waiver of proof of such fact, does not relieve the assured of the burden of proving at the trial the extent of his loss, and the cash value thereof at the time of the loss. The agreement was effectual only to show that the condition precedent to the maturity of policy and right to sue had been performed by the furnishing of such "preliminary proofs of loss." These preliminary proofs of loss are never admissible at the trial as evidence of the fact of loss, or the amount thereof. If authorities be desired for so plain a proposition, they may be found in *Mutual Insurance Company* v. *Stibbe*, 46 Md., 302; *Breckenridge* v. *Insurance Company*, 87 Mo., 62; *Hiles* v. *Insurance Company*, 65 Wis., 585.

It is said by counsel for the insured that the proof that the bank sought $3,000 of insurance, and that the agent fixed it at $2,000, coupled with the fact that the loss was shown to be a total one, furnishes evidence of value of property destroyed sufficient to sustain the judgment. We do not think so. It may show the estimate placed by the assured and the insurer upon the property at the time of the insurance, but does not show the actual cash value *at time of loss*, some months thereafter.

Inasmuch as it is manifest from the record that either the trial Judge was mistaken in applying the law concerning valued policies to this case, or the assured was unintentionally misled by the agreement dispensing with evidence of preliminary proof of loss—one or both—we will reverse the judgment and remand the cause for a new trial.

It is true that we might be authorized to render judgment here for the plaintiff in error, because of the failure of the plaintiff below to make out his case. But where we see, as we do here, that the plaintiff below is entitled to some recovery, the amount of which is not shown, owing either to the error of the trial Judge upon the law of the case, or to a misunderstanding of an agreement of counsel, without culpable negligence, we undoubtedly have the power to remand for further proof, which the record shows is obtainable.

The judgment is therefore reversed, at cost of defendant in error, and cause remanded.